CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

Aug. 26, 2016

JULIA C. DUDLEY, CLERK
BY: A. Melvin
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:15-cr-00098 |
| | ) | |
| JON PHILLIP DUMIRE, | ) | By: Elizabeth K. Dillon |
| | ) | United States District Judge |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Pending before the court are various motions in limine filed by the defendant, John Phillip Dumire, and by the United States. The motions have been fully briefed and were argued at two hearings. The court announced some of its rulings at the second hearing, and below provides below those rulings, some additional rulings, and further reasoning.

Dumire stands charged with two counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and two obstruction-of-justice offenses: one count of witness intimidation, in violation of 18 U.S.C. §1512(b)(1), and one count of threatening to retaliate against a witness, in violation of 18 U.S.C. §1513(b)(1) and (2). He brings three motions in limine seeking the exclusion of certain evidence from his upcoming trial.[1] In the first, he asks the court to keep out evidence that he possessed a firearm outside the dates of the charged offenses. In the second, he asks the court to keep out evidence that he committed acts of domestic violence against his former girlfriend and evidence that he threatened to assault her mother. And in the third, he asks the court to keep out six categories or pieces of evidence. For the reasons stated on the record and in more detail below, the court will grant in part and deny in part the first motion, deny the second, and grant in part and deny in part the third.

---

[1] The first two were filed by prior counsel. Dumire's current counsel filed a reply memorandum in further support of both of those motions (Dkt. No. 144), which the court has also considered.

The Government has filed two motions in limine of its own. In the first, which Dumire agrees should be granted under current Fourth Circuit precedent, the Government seeks to exclude evidence and argument referencing or mentioning any sentence, punishment, or other penalty or consequences that he might receive if convicted. (Dkt. No. 141.) The court will grant that motion, but Dumire has preserved his objection to it for appeal. In the second, the Government requests that the court exclude certain impeachment evidence related to "Witness One," now identified as Officer Presson, who is a law enforcement officer and expected to testify at trial. That motion is granted in part and denied in part.

## I. BACKGROUND

The following background is derived from the Government's factual proffer and exhibits.

### A. Ray Cooper's Death

At around 7:30 on the morning of December 27, 2014, officers with the Roanoke City Police Department responded to a 911 call and found Ray Cooper lying in the alleyway behind his house on 8th Street in southeast Roanoke, Virginia. Cooper had suffered a fatal gunshot wound. Officers recovered a knife, a .25-caliber handgun, and a .380 cartridge casing from the scene.

As officers were responding to the scene of Cooper's death, Dumire was at Roanoke Memorial Hospital, seeking medical attention for multiple stab wounds. Officers responded to the hospital and seized (among other things) Dumire's shoes, which were splattered with blood. Dumire had been taken to the hospital by his then-girlfriend Meghan Smith. At the time, the two were living with her mother, Jennifer Smith, who had a house on the same block of 8th Street as Cooper. Cooper was the grandfather of Meghan's four-year-old boy.

2

### B. Events Before Cooper's Death

On the evening of December 26, 2014, Dumire and Meghan attended a party at a house on Stewart Avenue in southeast Roanoke. Dumire drank alcohol and took Xanax. He also carried two guns—a .25-caliber handgun and a .380-caliber handgun. The .25-caliber handgun was silver with a white handle, like the .25-caliber handgun later recovered at the scene of Cooper's death. Sometime later that night or early the next morning, Dumire decided to leave the party and take two other guests, Charles Tabor and Justin Hall, home. Meghan went, too.

The group left in a pickup truck. In spite of being intoxicated, Dumire drove. The group first headed to Tabor's house in southeast Roanoke. On the way, Dumire struck several parked cars. After dropping Tabor off, the group travelled to the town of Vinton to pick up Jennifer and take her home. She was waiting at the Burger King where she worked. The group arrived at around 5 a.m. Jennifer got in the truck, and the group headed back to southeast Roanoke. Before reaching Jennifer's house, Dumire, who was still armed with both of his guns, told the other members of the group that if police stopped him, he was going to shoot at them. He also told his passengers to tell police that they had been taken hostage.

When the group arrived at Jennifer's house, Dumire got out of the truck and went across the street to urinate, leaving both of his guns behind. Jennifer also got out of the truck. As she began walking to her house, Meghan called her back. Fearful of what Dumire might do with the guns, Meghan asked Jennifer to take them. Jennifer grabbed the guns and wrapped them in her work shirt. She then walked to her house and hid the guns outside.

The group next took Hall to an apartment near the city of Salem where he was staying. Dumire and Meghan went inside with Hall. When Dumire and Meghan left, he began to verbally and physically assault her. The two had been fighting throughout the evening, but Dumire

3

became especially violent toward Meghan when he realized that she had taken his guns and given them to Jennifer. As Dumire and Meghan travelled to Jennifer's house, they came across their neighbor Ricky Akers in his car. Akers saw Dumire physically assaulting Meghan inside the truck. When Dumire and Meghan reached Jennifer's house, he again physically assaulted her. He also threatened Jennifer until she turned over his guns.

In the early morning of December 27, 2014, Robert Overstreet, one of Dumire's friends, received a call that Dumire was intoxicated and agitated. Overstreet went over to Jennifer's house to see Dumire. As the two talked outside, they saw Cooper walking his dog. Dumire told Overstreet that he should have killed Cooper by now. Overstreet tried to calm Dumire down and told him to put away the .25 and the .380 that Dumire was carrying.

During this time, Overstreet's girlfriend kept calling him, so he decided to head over to her house. As he walked away, Overstreet heard yelling. He turned around and went back. He saw Dumire with one of his guns pointed at Cooper, who had his hands up. Dumire told Cooper that he should have killed him already. With the gun raised, Dumire cried out: "This shit won't shoot!" He then dropped the gun and began fighting with Cooper. As the two tussled, Overstreet heard a gunshot and saw Cooper fall to the ground. Dumire ran to Jennifer's house, and Overstreet ran to his girlfriend's house.

Dumire later admitted to several persons that he shot Cooper. He claimed, however, that it was in self-defense.

## C. Events After Cooper's Death

After Dumire was discharged from the hospital, he and Meghan decided to stay at a local hotel. During their stay, Dumire carried his .380-caliber handgun as well as another firearm. He also physically assaulted Meghan, apparently after she hid the .380 from him. This occurred

4

approximately one week after December 27, and approximately two weeks before the gun was seized.

On January 21, 2015, Dumire attended another party at the house on Stewart Avenue. During that party, officers with the Roanoke City Police Department responded to a disturbance call. When they entered the house, Dumire was sitting on a sofa in the living room. The officers searched the sofa and found a .380-caliber handgun underneath the cushion where Dumire had been sitting. They seized the gun.

Forensic scientists tested the gun, the .380-caliber casing found at the scene of Cooper's death, and the bullet removed from Cooper's body, and concluded that the casing and bullet had been fired from the gun. They also tested the blood on Dumire's shoes and determined that the blood on one of them was Cooper's.

**D. Dumire's Arrest and Indictment**

Dumire was arrested and indicted on two counts of being a felon in possession of a firearm. The first count charged him with possessing a .25-caliber semi-automatic pistol and a .380-caliber semi-automatic pistol on or about December 27, 2014, and the second charged him with possessing a .380-caliber semi-automatic pistol on or about January 21, 2015. He pleaded not guilty to both charges and was remanded to the marshal's custody pending trial. While being detained at the Roanoke City Jail, Dumire ran into Overstreet, who was also in custody at the jail. Dumire told Overstreet that he was being held on two federal gun charges that were being connected to the "murder." Dumire went on to tell Overstreet not to run his mouth because Dumire knew were his "peoples" lived. Overstreet understood these words to be a threat against his family.

5

As a result of this conduct toward Overstreet, Dumire has been indicted on two more counts—one for witness tampering and one for retaliation against a witness. He has pleaded not guilty to these additional charges as well.

**E.  Motions in Limine**

Dumire is scheduled to be tried on all charges beginning August 29, 2016. In preparation for trial, he brings three motions in limine, as noted above. Nearly all relate to what he describes as other-bad-acts evidence and he urges that the various categories of evidence are inadmissible under the Federal Rules of Evidence. As noted, the Government has also filed two motions in limine. All five motions are discussed below

## II.  DISCUSSION

**A.  Standard of Review**

A motion in limine allows the trial court to rule in advance of trial on the admissibility of anticipated evidence. *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984). The trial court should exclude evidence on a motion in limine only when the evidence "is clearly inadmissible on all potential grounds." *United States v. Verges*, No. 1:13-cr-222, 2014 WL 559573, at *3 (E.D. Va. Feb. 12, 2014). When faced with a motion in limine, though, the court "may reserve judgment until trial so that the motion is placed in the appropriate factual context." *Verges*, 2014 WL 559573, at *3 (citing *Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Group*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996)). Moreover, even if the trial court does rule on the motion before trial, its decision "is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the [factual] proffer." *Luce*, 469 U.S. at 41.

6

## B. Applicable Rules

In support of his motions, Dumire relies on Federal Rules of Evidence 401, 402, 403, and 404(b). Rules 401 and 402 address relevancy. Under Rule 402, all "[r]elevant evidence is admissible unless" specifically prohibited by the Constitution, a federal statute, or another evidentiary rule. Fed. R. Evid. 402. Rule 401 defines relevant evidence as having "any tendency to make a fact [of consequence to the determination of the case] more or less probable than it would be without the evidence." Fed. R. Evid. 401.

But even relevant evidence may be excluded under certain circumstances. Rule 403 instructs the trial court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Rule 404(b) deals with the admissibility of "other bad acts" evidence. It states in relevant part:

> Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> **. . . .** This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Fed. R. Evid. 404(b)(1)–(2). If the Government intends to offer evidence under this rule at trial, then it must give the defendant "reasonable notice of the general nature of such evidence" beforehand. Fed. R. Evid. 404(b)(2)(A)–(B).

Rule 404(b) is a rule of inclusion. *United States v. Powers*, 59 F.3d 1460, 1464 (4th Cir. 1995). "It admits all evidence of other crimes (or acts) relevant to an issue in a trial except that

7

which tends to prove only criminal disposition." *United States v. Masters*, 622 F.2d 83, 85 (4th Cir. 1980) (quoting *Weinstein & Berger's Evidence* § 404(8) (1979)). Nevertheless, "[e]vidence admissible under Rule 404(b) must still meet Rule 403's requirement that its prejudicial value not outweigh its probative value." *United States v. Chin*, 83 F.3d 83, 88 (4th Cir. 1996). Accordingly, other-bad-acts evidence is admissible under Rule 404(b) so long as it is (1) relevant to an issue other than character, (2) necessary to prove an element of the charged offense, (3) reliable, and (4) more probative than prejudicial. *United States v. Queen*, 132 F.3d 991, 995 (4th Cir. 1997).

Not all other-bad-acts evidence, however, falls within Rule 404(b)'s scope. In particular, the rule does not apply to evidence of other bad acts that are intrinsic (as opposed to extrinsic) to the charged offense. *Chin*, 83 F.3d at 87. Other bad "acts are intrinsic when they are 'inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged.'" *Id.* (quoting *United States v. Lambert*, 995 F.2d 1006, 1007 (10th Cir. 1993)). "[E]vidence is inextricably intertwined with the evidence regarding the charged offense if it forms an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted." *Id.* (alteration in original) (quoting *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007)). Though evidence of other bad acts that are intrinsic is not subject to Rule 404(b)'s limitations, such evidence must still satisfy Rule 403's requirement that its prejudicial value not outweigh its probative value. *United States v. Seabolt*, 554 F. App'x 200, 206 (4th Cir. 2014).

## C. Firearm Evidence

Dumire contends that evidence that he possessed a firearm outside the dates of the charged offenses is inadmissible other-bad-acts evidence under Rule 404(b), because its only

8

purpose is to show his propensity to possess a firearm. Alternatively, he argues that the court should only allow into evidence incidents of possession or use that relate to the two firearms he is charged with possessing, and only within two months of the offenses.

The Government contends that much of the evidence regarding Dumire's prior or subsequent use or possession of firearms is intrinsic evidence inextricably intertwined with the charges against him. The Government further argues that, to the extent such evidence is not intrinsic, and instead falls within Rule 404(b), it satisfies all four criteria of the test set forth in *Queen*.

In its Rule 404(b) notice, the Government lists eight pieces of evidence relating to Dumire's possession of a firearm on dates other than those of the charged offenses. In its recent filings, it has clarified that the evidence it intends to present is as follows: (1) four witnesses are expected to testify that Dumire possessed the charged firearms in the hours, days, or months before December 27, 2014, and one witness will testify that Dumire possessed the .380 on January 21, 2015, the night it was seized from the couch cushion; (2) three witnesses are expected to testify that Dumire possessed at least one additional, uncharged firearm before December 27, 2014;[2] (3) at least one witness is expected to testify that Dumire possessed the .380 and an additional, uncharged firearm in the days between December 27, 2014, and January 21, 2015; and (4) two witnesses are expected to testify that Dumire possessed firearms other than those charged, in July and August 2015, approximately five months after the charged conduct. (Dkt. No. 148 at 7–8.)

The Government also seeks to introduce evidence concerning Dumire's possession of a weapon in connection with his conviction, after a guilty plea, for the malicious wounding of

---

[2] The Government does not indicate how long before December 27, 2014, these firearms were possessed. If the possession was remote in time, the court may reevaluate its ruling.

Gregory Lee Davis. Specifically, it contends that Dumire possessed a firearm on or about July 1, 2010, when he shot Davis. It claims that the event is relevant here because, at least in part, of its similarity to the shooting of Cooper. Apparently, the Davis shooting also took place in an alley, approximately six blocks from the shooting of Cooper. According to multiple eyewitnesses who were present, Dumire raised a black handgun and fired one shot that struck Davis in the chest. As a result of that shooting, he pleaded guilty to malicious wounding, use of a firearm in a malicious wounding, and discharge of a firearm in a public place.

The last piece of evidence related to Dumire's possession of a firearm is from Dumire's facebook account,[3] which he opened under the name "Young Gunning Savage." It consists of a "rap video" that was posted on his account, and was allegedly made in 2012, after he pleaded guilty to the malicious wounding charge. The video is simply a recording of a shirtless Dumire looking at the camera and rapping, with background music. In the video, he says things such as: "I run these streets"; "I better get you before you get me. That's how it is when [a person] got beef"; "[Y]our boy Greg got hit," an apparent reference to Davis's wounding; and that Dumire "keep[s] my heat tucked," which witnesses will testify refers to his possessing a firearm.[4]

First, the evidence that is intrinsic to the offense is not subject to Rule 404(b). Specifically, evidence of Dumire's possession of the charged firearms on December 26 and 27, 2014, at the hotel following his release from the hospital, and on January 21, 2015, does not come within Rule 404(b)'s ambit. "Evidence of uncharged conduct is not 'other crimes'

---

[3] It is not clear to the court whether the Government intends to introduce a photo of Dumire from his facebook account, in which he is purportedly holding a gun. Although in earlier filings, the Government mentioned both this photo and evidence of other shootings as potential evidence, neither the photos nor those other incidents are identified as evidence the Government intends to introduce in its most recent filing. (*Compare* Dkt. No. 79 at 9-10 *with* Dkt. No. 148 at 7–8.)

[4] The Government provided the video and the court has reviewed it. It is difficult to capture all of the words in the copy provided to the court, but it does appear that these particular phrases are uttered.

evidence subject to Rule 404 if the uncharged conduct 'arose out of the same series of transactions as the charged offense, or if [evidence of the uncharged conduct] is necessary to complete the story of the crime on trial.'"  *United States v. Siegel*, 536 F.3d 306, 316 (4th Cir. 2008) (alterations in original) (quoting *United States v. Kennedy,* 32 F.3d 876, 885 (4th Cir. 1994)).  Here, Dumire's possession of at least one firearm on December 26 and at the hotel a few days later arose out of the same series of transactions as the charged offenses in Counts One and Two.  Indeed, the conduct involved one or more of the same firearms and occurred within hours or days of the charged offenses.  Further, evidence of the conduct is necessary to complete the story of the charged offenses because it provides context for the Government's claim that Dumire was involved in Cooper's shooting, which is relevant to the Government's theory of "constructive possession" of the .380.  Among other things, it places the gun that shot Cooper in Dumire's hands before and after the shooting.   In the court's view, then, his possession of guns during this timeframe is intrinsic to the charged offenses and, consequently, beyond Rule 404(b)'s reach.

Although evidence of Dumire's possession of the charged firearms or other uncharged firearms on December 26, at the hotel a few days later, and on January 21, 2015, falls outside Rule 404(b)'s scope, it must still satisfy Rule 403's requirement that its prejudicial value not outweigh its probative value to be admissible.  *Chin*, 83 F.3d at 88.  This evidence, to be sure, would be prejudicial to Dumire's case.  But "general prejudice is not enough to warrant exclusion of otherwise relevant, admissible evidence."  *Siegel*, 536 F.3d at 319.  Instead, the "evidence must be *unfairly* prejudicial, and the unfair prejudice must *substantially* outweigh the probative value of the evidence."  *United States v. Hammoud*, 381 F.3d 316, 341 (4th Cir. 2004).  "Evidence is unfairly prejudicial . . . when there is a genuine risk that the emotions of a jury will

11

be excited to irrational behavior, and this risk is disproportionate to the probative value of the offered evidence." *Siegel,* 536 F.3d at 319 (quoting *United States v. Williams,* 445 F.3d 724, 730 (4th Cir. 2006)). In this case, the court does not believe that the introduction of this evidence would create a genuine risk that jurors would be excited to irrational behavior because that evidence does "not involve conduct any more sensational or disturbing than the crimes with which [Dumire is] charged." *United States v. Boyd,* 53 F.3d 631, 637 (4th Cir. 1995) (citing *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990)). On the contrary, it involves the same conduct—possession of firearms. Accordingly, the court will allow the Government to introduce evidence of Dumire's possession of firearms on December 26 and 27, at the hotel a few days later, and on January 21, 2015.

The court now turns to the evidence that is subject to Rule 404(b) and thus must meet the four-part test set forth in *Queen* to be admissible. The court discusses first the evidence that Dumire possessed the charged firearms or other firearms on other occasions outside of the window of the charged offenses, *i.e.*, outside of the period from December 26, 2014 to January 21, 2015. This conduct, unlike the other conduct just discussed, is not intrinsic to the charged offenses: It did not arise out of the same series of transactions as the charged offenses; nor is evidence of the conduct necessary to complete the story of those offenses. Moreover, the conduct was not a necessary preliminary to the charged offenses. Consequently, evidence of the conduct is not admissible unless it meets Rule 404(b)'s requirements.

The court concludes that most of the evidence that Dumire possessed these or other firearms, on dates outside the window of the charged offenses, is admissible under Rule 404(b) because it satisfies all four *Queen* factors.[5] First, it is relevant to an issue other than character

---

[5] Dumire's possession of a firearm related to the Davis shooting and the facebook video are addressed separately below.

and necessary to show an element of the offense, and so the first two factors are satisfied. As the Fourth Circuit has recognized, in a § 922(g) case, possession of other firearms at other times can be admitted under Rule 404(b) because it is relevant to the defendant's *knowingly* and *intentionally* possessing the charged firearms. *See, e.g.*, *United States v. Trent*, 443 F. App'x 860, 863 (4th Cir. 2011) (affirming district court's admission of evidence that the defendant possessed uncharged firearms three and four years prior where, like the case before it, the defendant fled from the police in his vehicle and tried to dispose of those handguns); *United States v. Comstock*, 412 F. App'x 619, 624 (4th Cir. 2011) (affirming Rule 404(b) admission of video of defendant walking around with at least one hunting rifle in felon-in-possession case, where he argued that he did not have knowledge of pistols in the trunk of his car); *United States v. Brown*, 398 F. App'x 915, 917 (4th Cir. 2010) (per curiam) (concluding that evidence of the defendant's prior possession of firearms was admissible and probative as to his intent to exercise dominion and control over firearm in case where government sought to prove constructive possession under § 922(g)); *United States v. McDonald*, 211 F. App'x 222, 225 (4th Cir. 2007) (per curiam) (holding that evidence that defendant "had previously been arrested for the possession of a firearm was relevant to his knowledge and intent to possess the handgun recovered here"). *Cf. United States v. Byers*, 649 F.3d 197, 208–09 (4th Cir. 2011) (ruling that testimony that defendant committed a shooting two years prior to the charged conduct was admissible as relevant and necessary to establishing motive, identity, and an intertwined scheme). *But see United States v. Tate*, 715 F.2d 864, 865–66 (4th Cir. 1983) (concluding, in case where the defendant was driving his wife's car and two pistols were discovered in the trunk, that the government could not introduce evidence under Rule 404(b) that witnesses had previously seen him in possession of a different pistol).

13

As to the second *Queen* factor—prior bad acts are necessary to prove an element—the *Queen* court explained that the court must consider the evidence in "light of other evidence available to the government." 132 F.3d at 997. Thus, "as the quantum of other non-Rule 404(b) evidence available to prove an issue unrelated to character increases, the need for the Rule 404(b) evidence decreases." *Byers*, 649 F.3d at 209. Here, based on the Government's representations, there are numerous witness who will testify that they saw Dumire with the charged guns on the December date charged in Count One. As to Count Two, it appears that there is less evidence tying Dumire directly to the .380 weapon on January 21, 2015, although the Government has said there is at least one witness who will testify he or she saw him with the .380 on the date it was seized. The Government also seeks to bolster the connection of Dumire to the .380 by tying it—and him—to Cooper's shooting. And there is reportedly evidence (DNA evidence and Overstreet's testimony, for example) placing Dumire at the scene of Cooper's shooting. So, there is already some evidence supporting his *knowing* and *voluntary* possession. Based on what has been provided to the court, it is difficult to say whether there will be sufficient non-Rule 404(b) evidence, so as to render at least some of this evidence unnecessary and thus inadmissible. In the event that, at trial, there is ample non-Rule 404(b) evidence, the court may limit some of this evidence. But at this point, the court concludes that, overall, the evidence of other possessions still satisfies the second *Queen* factor.

As to the third *Queen* factor—the reliability of the evidence—the Government has stated that many eyewitnesses who are familiar with Dumire will testify that they observed his possession of firearms on different occasions. Without knowing who the various witnesses are and the circumstances of their observing Dumire possessing firearms, it is difficult to assess reliability before trial. But the court notes that there is nothing before the court at this point that

14

seriously calls into question the reliability of such evidence for Rule 404(b) purposes. Indeed, Dumire has not presented any specific challenges to reliability, other than the general assertion that the evidence is unreliable. So, to the extent it becomes necessary to address the reliability component of the evidence at trial, the court can do so at that time. For now, assuming that reliability can be established, the court concludes that the evidence is admissible as Rule 404(b) evidence.

Turning to the fourth *Queen* factor, which incorporates Rule 403's requirement that the probative value of such evidence outweigh any prejudicial effect, the court concludes that the evidence here meets that criterion, as well. Again, there will already be evidence before the jury that Dumire possessed firearms, so the prior or subsequent acts of possession are not "any more sensational or disturbing than" the charged crimes. *See Boyd*, 53 F 3d at 637. Further, the court is aware of the Fourth Circuit's admonition that "the balance under Rule 403 should be struck in favor of admissibility, and evidence should be excluded only sparingly." *United States v. Aramony*, 88 F.3d 1369, 1378 (4th Cir. 1996). Thus, the court will allow the additional evidence identified by the Government regarding Dumire's possession of the charged firearms and other firearms under Rule 404(b). (Dkt. No. 148 at 7–8.) The court may limit such testimony at trial, however, to the extent it is needlessly cumulative. *See* Fed. R. Evid. 403.

The court considers separately the evidence that Dumire possessed and used a gun during the conduct that resulted in his felony conviction for maliciously wounding Davis, as well as the facebook video which purportedly references the shooting of Davis, both of which the court views as occupying a different position than evidence that Dumire simply possessed guns on other occasions. First of all, the possession and use in wounding Davis is more remote in time than the other instances of Dumire's possessing a firearm discussed above. The wounding

occurred in 2010, Dumire was convicted in 2011, and he allegedly posted the video in 2012. While the timing is not dispositive, *see United States v. Brown*, 398 F. App'x 915, 917 (4th Cir. 2010) (per curiam) ("The passage of time did not require exclusion of this relevant, probative evidence," such as the defendant's possession of firearms more than a decade before the offense), it is a factor the court can consider in determining whether the evidence is being offered to establish an element of the charged offense—that Dumire's possession was knowing and intentional—or offered only as propensity evidence.

Second, the Government's attempts to show the similarity of the facts of that shooting with the Cooper shooting fall short. The court is particularly concerned about this argument— which is basically that the two events are similar because they both involved shooting someone in an alley and took place in the same general vicinity—because Dumire is not charged in this indictment with the shooting of Cooper. Clearly, evidence of Cooper's shooting is both intrinsic to the charged crimes and is evidence the Government intends to rely upon to prove constructive possession of the .380. But the court is concerned that the admission of evidence regarding the Davis shooting would tend to cause the jury to do precisely what Rule 404(b) is designed to prevent: to assume that because Dumire previously shot someone else on another, unrelated occasion, he also shot Cooper.

Dumire also argues that this evidence is not necessary under the second *Queen* factor. He points out that, according to the Government, there is ample non-Rule 404(b) evidence against Dumire. *See Byers*, 649 F.3d at 209 ("[A]s the quantum of other non-Rule 404(b) evidence available to prove an issue unrelated to character increases, the need for the Rule 404(b) evidence decreases."). But the court agrees that evidence that Dumire previously pleaded guilty to using a firearm is strong, probative evidence that the charged possessions were knowing and

intentional, especially as to the .380, which the Government is attempting to prove both through a theory of actual possession and constructive possession.

The court thus concludes that the fact that Dumire pleaded guilty to, and was convicted of, an offense that involved him knowingly possessing a gun, like the other testimony the Government intends to introduce concerning his possession, satisfies the first three *Queen* criteria. As to the fourth factor, though, the evidence *in the form that the Government proposes to introduce it*, is inadmissible under Rule 403. That is, the probative value of evidence that Dumire pleaded guilty to and was convicted of a felony involving the possession of a gun outweighs the prejudicial value of that evidence. But if the evidence includes the circumstances and facts supporting that offense, which involved him shooting at someone, the court concludes that the dangers of unfair prejudice and of confusing the jury outweigh what little probative value that evidence has. In telling the jury that Dumire was previously convicted of a crime involving shooting someone, it practically invites the jury to conclude that, based on the fact that he shot Davis, Dumire also shot Cooper (and thus, combined with the other evidence, including ballistics evidence, possessed the .380). So used, it is improper propensity evidence.

Accordingly, the court will utilize a similar, but slightly modified, approach as was used by the district court in *United States v. Stewart*, No. 5:14-cr-90, 2014 WL 4978502 (E.D.N.C. Oct. 6, 2014), *aff'd*, 628 F. App'x 179 (4th Cir. 2015). There, the court found that, if the government limited the evidence of the defendant's prior felon-in-possession convictions "to the identification of the previous convictions and the charges of conviction [which were two prior felon-in-possession charges], without introducing the underlying factual circumstances of those convictions," which involved shots being fired, and the weapon being used to assault someone,

17

it would be admissible and not unduly prejudicial under Rule 403.  As that trial court explained, the limitation imposed:

> adequately ensured that the evidence will be limited to the fact that gives these convictions their probative value—that plaintiff knowingly possessed a firearm on two previous occasions—while minimizing the risk of exciting the jury's emotions.  When admitted along with an appropriate limiting instruction, the risk of unfair prejudice from this evidence will not substantially outweigh its probative value.  *See United States v. Powers,* 59 F.3d 1460, 1468 (4th Cir.1995) ("[C]autionary or limiting instructions generally obviate any such prejudice."); *see also United States v. Burton,* 155 F. App'x 92, 95 (4th Cir.2005) (holding that district court in felon-in-possession case did not err in admitting stipulation describing prior convictions for illegal possession of a firearm, where stipulation excluded details regarding the circumstances of prior convictions and included only identification of the convictions, and court issued limiting instructions).

2014 WL 4978502, at *8.  The court will follow the same basic approach in this case, with one modification.  Here, the mere identification of the underlying felony—malicious wounding— with a notice that it involved Dumire possessing a gun, will strongly forecast to the jury that it involved Dumire shooting someone.  Accordingly, the court will permit the Government to introduce evidence that Dumire previously pleaded guilty to, and was convicted of, a felony that involved his possession of a firearm.  It will not permit introduction of the identification of the conviction, nor the underlying facts.

The court has separately considered the rap video.  The rap video contains a reference to the Davis shooting—"Greg got hit"—and so that portion must be excluded under the same reasoning as set forth above.  As to the remainder of the video, it does have some probative value as Rule 404(b) evidence, particularly the portion in which Dumire states that he keeps his "heat tucked."  Like the evidence that he possessed other guns at other times, this is some evidence that his possession on the charged occasions was knowing and voluntary.  But the video was made at least two years before the events here, and it does not actually show Dumire possessing

18

a gun. The video suffers from other infirmities, as well. For example, the quality is not good and so the words themselves are difficult to understand without repeat playing, which could unduly emphasize it. It also contains language, including the N-word (or some variant thereof), that could run the risk of inflaming the jury. In short, the court believes that the video is of limited probative value, but will greatly increase the risk that the jury will convict Dumire on improper grounds. Accordingly, because the court concludes that the prejudice from the video substantially outweighs its probative value, it will exclude the video.

Before turning to the next category of evidence, the court briefly addresses Dumire's alternative argument concerning other evidence of his possession of firearms, which is that any evidence that he previously or subsequently possessed a firearm should be limited temporally and further limited only to possession of the firearms charged in the indictment. In support of this contention, he relies heavily on *United States v. Miller*, 673 F.3d 688 (7th Cir. 2012). In that case, the Seventh Circuit cautioned against the use of the inextricably-intertwined-evidence doctrine to remove evidence from Rule 404(b)'s scope, and suggested that, in a felon-in-possession case, evidence of prior, uncharged gun possessions should be allowed only where the possession was recent and involved the same gun. *Id.* at 695. But if the prior possession was of a different gun, or if the prior possession was further removed in time, the court stated that value of such evidence drops and it makes it more likely that it is being used only to show propensity. *Id.* at 695. While those general principles are compatible with the Fourth Circuit's cases on the subject, the Fourth Circuit appears to have endorsed a broader approach to the admissibility of firearm evidence in § 922(g) cases as discussed above.[6]

---

[6] The court has also considered the two Fourth Circuit cases cited by Dumire, but concludes that they are factually distinguishable. In particular, neither *United States v. Moore*, 709 F.3d 287 (4th Cir. 1980), nor *United States v. McBride*, 676 F.3d 385, 397 (4th Cir. 2012), even involved a § 922(g) offense. Instead, in *Moore,* the court held that where witnesses testified that a carjacking defendant used a revolver, the defendant's possession of a

### D. Domestic-Violence Evidence

Dumire next argues that any evidence that he committed acts of domestic violence against Meghan or Jennifer Smith is inadmissible other-bad-acts evidence under Rule 404(b), because its only purpose is to prove that he has a bad character. As confirmed during the hearing, the only evidence of domestic violence that the Government intends to introduce is that Dumire physically assaulted Meghan on December 26 and 27, 2014, and at the hotel following Dumire's release from the hospital, and that he threatened Jennifer on December 27, 2014, after she hid his guns from him at Meghan's urging. Much like the evidence concerning Dumire's possession of the charged firearms in the days surrounding the incident, these domestic violence incidences are part and parcel of the story of his crimes. *Chin*, 83 F.3d at 87 (noting that evidence is intrinsic "if it forms an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted"). They also bear directly on an element of the offense—that Dumire knowingly and intentionally possessed the charged firearms on the dates charged. In these instances, the testimony is apparently that Dumire was so enraged that his weapons were taken from him that he was willing to assault and threaten people to get them back. That is certainly probative evidence of his intention to possess the firearms.

---

revolver in an unrelated prior incident was admissible, but evidence that he possessed a semi-automatic pistol on two prior occasions was not. 709 F.3d at 295–96. Similarly, in *McBride*, the court concluded that the trial court had erred in admitting evidence of prior crack cocaine sales or statements that the defendant could manufacture crack, where the charged offenses involved cocaine sales 18 months later, were at a different location, and there was no evidence that the cocaine was being used to manufacture crack. 676 F.3d at 397. Neither of those cases, then, involved the use or prior possession of a firearm to establish the knowing or intentional element of a § 922(g) offense.

    At argument, defense counsel suggested that *Moore*, both alone and through its reliance on *Miller*, established new principles as to the use of Rule 404(b) evidence rule in the Fourth Circuit. Accordingly, his argument continues, the court should ignore published precedent before that date and unpublished precedent afterward. The problem with this argument is that neither *Moore* itself, nor the later Fourth Circuit cases that cite it, have interpreted it as creating new law or being any kind of watershed decision. *See, e.g.*, *United States v. Barefoot*, 754 F.3d 226, 236 (4th Cir. 2014) (citing *Moore* for general principles with regard to 404(b)); *United States v. Davis*, 591 F. App'x 187, 190–91 (4th Cir. 2014) (same); *United States v. McLean*, 581 F. App'x 228, 233 (4th Cir. 2014) (same).

The court has carefully considered whether the evidence should nonetheless be excluded under Rule 403, but concludes that it should not. While there is obviously a prejudicial effect from evidence that he assaulted or threatened these women, the probative value of that testimony, which also is part of the story of the crime, outweighs any prejudice.

**E. Categories of Evidence Set Forth in Defendant's Third Motion in Limine**

In his third motion in limine, Dumire asks the court to exclude six additional categories of evidence. As to all of these, he argues that the evidentiary items are "lacking in reliability and probative value and are unnecessary, collateral, and unfairly prejudicial" to him. (Dkt. No. 143 at 2.) The court discusses each briefly.

1. Prior Convictions

Dumire states that he will stipulate to his status as a previously-convicted felon and so the court should exclude "[t]he name, number[,] and nature of Dumire's prior felonies and/or misdemeanor convictions." (Dkt. No. 143 at 1.) For support, he cites to *Old Chief v. United States*, 519 U.S. 172 (1997). The Government responds with two distinct arguments. First, it contends that, if Dumire takes the stand at trial, it should be allowed to question him about his criminal convictions, consistent with Federal Rule of Evidence 609.[7] It also seeks to introduce his conviction for the 2010 wounding of Davis as Rule 404(b) evidence and claims that it is admissible under that provision, as discussed above.

In *Old Chief*, 519 U.S. 172 (1997), the Supreme Court resolved a circuit split on the issue of whether, where a defendant in a felon-in-possession case agrees to stipulate to his status as a felon, the Government is precluded from introducing evidence in order to establish that element

---

[7] The Government references Federal Rule of Evidence "609(B)," which the court interprets as a reference to Rule 609(a)(1)(B). That provision states that felonies that are less than ten years old "must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant."

of the offense. The Court concluded that, where the defendant agrees to so stipulate, or admits his status as a felon in a § 922(g) offense, the Government may not introduce the name or the details of the conviction in order to prove status. 519 U.S. at 191–92.

The *Old Chief* Court expressly noted, though, that the facts or name of the prior felony could be admissible on other grounds, such as Rule 404(b) evidence, or to prove some other element of the offense:

> [I]f, indeed, there were a justification for receiving evidence of the nature of prior acts on some issue other than [the defendant's status as a felon] (*i.e.*, to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," Fed. R. Evid. 404(b)), Rule 404(b) guarantees the opportunity to seek its admission.

*Id.* at 190. *See also id.* at 192 (acknowledging that, while Rule 403 will generally preclude the introduction of such evidence when offered to show status, "the prosecutor's choice will generally survive a Rule 403 analysis when a defendant seeks to force the substitution of an admission for evidence creating a coherent narrative of his thoughts and actions in perpetrating the offense for which he is being tried").

The Fourth Circuit has since held that *Old Chief* does not prohibit the admission of the facts underlying a prior conviction where they are introduced to establish a different element of the offense, such as possession. *United States v. Grimmond*, 137 F.3d 823, 831–832 (4th Cir. 1998). In *Grimmond*, the defendant was charged with a number of gun and drug charges, most of which were intertwined with the facts of the prior convictions (which involved the defendant shooting two people). The Fourth Circuit ruled that the trial court had properly admitted the facts of those prior convictions where they were direct evidence of the crimes with which he was charged, and not "other crimes" evidence under Rule 404(b). *Id.* at 832. In rejecting any contention that *Old Chief* prohibited the introduction of such evidence, the Fourth Circuit noted

22

that the Government could not introduce the facts evidence of his predicate felony conviction to prove status, it could admit them to prove possession. *Id.* at 831. *See also United States v. Melvin*, No. 05-4997, 2007 WL 2046735, at *13–14 (4th Cir. July 13, 2007) ("Courts have recognized, however, that *Old Chief* does not control a case where the prior conviction evidence is offered to prove an issue which Rule 404(b) specifically permits to be proven by other crimes evidence, assuming the issue is relevant and subject, of course, to Rule 403 balancing.").

Accordingly, the court concludes that Dumire's prior conviction for shooting Davis, while not admissible to prove his status as a felon, may come into evidence under Rule 404(b) in the modified form discussed above in order to minimize unfair prejudice, *i.e.*, without reference to the name of the conviction or the underlying facts. It is likewise not admissible (except in the modified form allowed) under Fed. R. Evid. 609(a)(1)(B) because the probative value does not outweigh its prejudicial effect. It is possible, however, that such evidence could come in if Dumire were to open the door to it. *See, e.g.*, *United States v. Ware*, 230 F. App'x 249, 255 & n.6 (4th Cir. 2007) (holding that district court did not err in allowing the prosecution to cross-examine the defendant on the substance of his prior convictions, despite his stipulation as to felony status, because he had "already testified to part of his criminal history"). Likewise, as to Dumire's other prior convictions, their admissibility may depend on Dumire's testimony at trial.

2. Evidence of Drug Trafficking by Dumire

Next, Dumire seeks to exclude any evidence that he was involved in drug trafficking. The Government counters that witnesses' testimony that Dumire sold drugs is necessary to show why Dumire armed himself and "will provide a complete picture and full story of the [witnesses'] knowledge of the events that transpired." (Dkt. No. 148 at 4.) It also argues that it should be admissible on cross-examination of Dumire, if he testifies. The Government argues

that any prejudicial effect does not outweigh its probative value, since the charged conduct is "more shocking than the more mundane sale of narcotics." (*Id.*)

The court concludes that this type of evidence is not admissible in this case under Rule 404(b). Dumire is not charged with drug trafficking, and this evidence is certainly not necessary to establish an element of the charges against him. Even in drug trafficking cases, moreover, the Fourth Circuit has recently held that it was error to admit, under Rule 404(b), prior sales of a different drug under different circumstances. *United States v. McBride*, 676 F.3d 385, 399 (4th Cir. 2012). Further, the evidence as applied here seems to be pure propensity-type evidence. The witnesses in this case certainly could be asked to testify about the fact that Dumire was armed without referencing his involvement in drugs or drug trafficking. The motion to exclude this evidence will be granted.

### 3. Evidence of Gang Affiliation or Activity

Dumire also requests that the court exclude evidence of his "affiliation with any gangs or formal or informal gang activity, including but not limited to any evidence that he used or conveyed recognizable gang signs." (Dkt. No. 143 at 1.) The Government does not oppose this request, and states that it will not seek to adduce such evidence, but reserves the right to bring in such information or cross-examine Dumire about these items, should he open the door. Subject to those limitations, the motion will be granted.

### 4. Evidence Concerning Domestic Assaults Against Jennifer Smith

As discussed above, the court will allow evidence concerning assaults or threats against both Meghan Smith and Jennifer Smith on December 26 and 27, 2014, and against Meghan Smith at the hotel after Dumire left the hospital.

5. Evidence Concerning Lack of Employment History or Visible Means of Support

Dumire also seeks to exclude evidence that he has little or no employment history or visible means of support. The Government posits that this information will bolster witnesses' testimony by showing that he was often in their presence and that the witnesses had the opportunity to observe him. (Dkt. No. 148 at 5.) Like the drug-trafficking evidence and for the same reasons, the court concludes that this is not proper Rule 404(b) evidence as to the charged offenses and thus will exclude it.

6. Any Evidence of the Rap Music Video

For the reasons set forth separately above, the rap video will be excluded.

**F. Impeachment Evidence as to Officer Presson**

As already noted, the defendant has objected to the Government's first motion in limine only to preserve it for appeal. Thus, the court will grant that motion and exclude evidence or argument concerning the potential punishment that Dumire may face if convicted.

The Government's second motion in limine seeks the exclusion of certain potential impeachment information. The Government has disclosed information about certain potential witnesses pursuant to *Giglio v. United States*, 405 U.S. 150 (1972). In its second motion in limine, the Government acknowledges that some of this information is proper impeachment evidence that Dumire may use to cross-examine its witnesses. It seeks to exclude other portions of the material, however. All of the evidence it seeks to exclude relates to "Witness One," whom Dumire identifies in his response as Officer Presson. Officer Presson was one of the officers that responded to the noise complaint on January 21, 2015, and he will also testify about the subsequent execution of a search warrant that led to the discovery of the .380 gun. According to

25

Dumire, Officer Presson reported that either he or another officer discovered the .380 gun under the couch cushion. (Dkt. No. 149 at 2.)

There are four incidents involving this officer that the Government seeks to exclude—the so-called Traffic Incidents, Locker Incident, Disclosure Incident, and Text Incident. The admissibility of these incidents, none of which directly relate to this case (other than possibly the Text Incident), is governed by Rule 608(b), which generally does not allow "specific instances of the conduct of a witness" to be proved by extrinsic evidence. Fed. R. Evid. 608(b). As the Fourth Circuit has explained, "Rule 608 authorizes inquiry only into instances of misconduct that are 'clearly probative of truthfulness or untruthfulness,' such as perjury, fraud, swindling, forgery, bribery, and embezzlement." *United States v. Leake*, 642 F.2d 715, 718 (4th Cir. 1981).

In his written response, Dumire makes no mention of the Traffic Incidents or Locker Incident, and counsel represented at the hearing that Dumire does not seek to question the witness regarding those incidents. Accordingly, the motion to exclude evidence of the Traffic Incidents or Locker Incident will be granted.

1. The Text Incident

The Government seeks to exclude evidence that Officer Presson referred to the court in a derogatory manner in a text exchange with a DEA Task Force Agent over the scheduling of Dumire's trial, based on Officer Presson's apparent frustration that the trial dates conflicted with his vacation. The text the Government seeks to exclude states: "Tell that shit bag judge to reschedule for me since he did for that dirt bag murderer." (Dkt. No. 149-2 at 2.)

The text has no probative value in this case, nor does it have any bearing on Officer Presson's credibility. Although Dumire attempts to liken it to conduct described in *United States v. Burns*, No. 6:13-cr-22, 2016 WL 910273, at *4 (W.D. Va. July 14, 2016), the conduct is not

26

comparable. The conduct by the police officer in *Burns* included him telling two lies to a witness and involved a described "abuse of power" and unprofessional conduct toward a witness in the case. *Id.* By contrast, the text here was an inappropriate expression of frustration over a trial schedule and sent to a colleague. The court will exclude it.[8] *See Leake*, 642 F.2d at 718.

2. The Disclosure Incident

The Disclosure Incident is described by the Government as demonstrating that Officer Presson "accidentally and apologetically may have divulged the presence of a confidential source." (Dkt. No. 142 at 10.) In his response, Dumire describes Officer Presson's conduct with regard to this incident in harsher terms, as "inexcusable conduct by a person who should not be wearing a badge any longer." (Dkt. No. 149 at 6.) The court has reviewed documents submitted by Dumire and additional documents from the Government regarding this incident and finds that the proper characterization lies somewhere in between the parties' descriptions.

Based on those documents, it appears plain that Officer Presson, in an unrelated investigation, divulged to a female acquaintance that there was a video of her being assaulted by her ex-boyfriend, a drug dealer who was under investigation. By conveying this information, he also divulged that the third person present during the assault, a confidential informant, was wearing a video-recording device. So, Officer Presson's conduct could have imperiled the safety and protection of the informant, although, based on all of the documents provided to the court, it appears plain that the disclosure itself was accidental. The police conducted an investigation into the disclosure. Officer Presson, who admitted he had told the female about the videotape, was verbally counseled.

---

[8] While the reference to Dumire as a "dirt bag murderer" might be admissible as evidence of possible bias by Officer Presson, Dumire has stated that he objects to any testimony by Officer Presson describing Dumire as a "murderer." (Dkt. No. 149 at 6 n.3.) Thus, the parties appear to agree that that portion of the text is inadmissible.

On balance, and considering the investigative reports provided to the court, the court concludes that the disclosure itself has no bearing on his truthfulness. There is nothing to suggest that his disclosure was anything other than accidental. Officer Presson's statements during the investigation into the disclosure, however, bear on his credibility. The statements provided reflect that he may have given differing accounts during the course of the investigation as to what transpired and how the disclosure occurred. Specifically, when first contacted about the possible disclosure, he apparently told an investigator that the assaulted woman told him that the assault was on video and that Officer Presson stated "that he didn't say yes or no to whether it was or not." (Dkt. No. 149-1 at 1.) Later, when asked again about it and told there might be an internal investigation, he said that he knew the video had come up in conversation but could not remember whether he or the woman had raised it, but said he would take the blame for it since she had called when he was sleeping and he was half out of it. (*Id.* at 2.) The Government correctly notes that there are references in the investigative file to his being apologetic over the incident. And it may be that the jury concludes that this does not bear on Officer Presson's truthfulness. But the court believes his responses during the investigation have enough bearing on truthfulness to allow cross-examination on this basis.

Defense counsel is cautioned, though, that while he may cross-examine Officer Presson as to his allegedly inconsistent statements during the investigation, which will necessarily require some discussion of the disclosure itself to provide context, counsel should not try to impeach Officer Presson regarding the disclosure itself.

III.     CONCLUSION

For the reasons stated above, and consistent with the limitations discussed above, the court will deny Dumire's first motion in limine in part and grant it in part, deny his second

motion in limine, and grant in part and deny in part his third motion in limine. The court will grant the Government's first motion in limine and will grant in part and deny in part its second motion in limine. An appropriate order will be entered.

Entered: August 26, 2016.

/s/ Elizabeth K. Dillon

Elizabeth K. Dillon
United States District Judge